Michael BLAKE, et al., Plaintiffs,

v.

Bruce BABBITT, Secretary of the Interior, et al., Defendants.

Civ. A. No. 93–0726 (RCL).

United States District Court, District of Columbia.

Nov. 18, 1993.

hours needed to comply, and defendants submitted no such estimates.

Richard H. Chused, Washington, DC, Gary L. Francione, Newark, NJ, for plaintiffs.

Teri T. Thomsen, U.S. Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on cross-motions for summary judgment. The court finds that there are no genuine issues of material fact, and that defendants are entitled to summary judgment as a matter of law, dismissing this case.

At issue is the validity of a regulation of the Bureau of Land Management ("BLM") of the United States Department of Interior, 43 C.F.R. § 4770.3(c), that allows a delegated field officer ("authorized officer") of BLM to make and place in full force and effect a decision to remove wild horses or burros pursuant to the Wild and Free–Roaming Horses and Burros Act ("Wild Horse Act", or "the Act"), 16 U.S.C. § 1331, *et seq.*

The Wild Horse Act was enacted in 1971, and it "extended federal protection to wild horses and empowered BLM to manage horses roaming public ranges as a part of the Agency's management of the public lands." *American Horse Protection Association v. Watt,* 694 F.2d 1310, 1311 (D.C.Cir.1982).

Because overpopulation of wild horses and burros resulted from passage of the 1971 Act, Congress in 1978 amended the Act through the Public Rangelands Improvement Act of 1978. These amendments seemed to strike a new balance between "protecting wild horses and competing interests in the resources of the public range." *American Horse Protection Association v. Watt,* 694 F.2d at 1316. The amendments made clear the importance of management of the public range for multiple uses, rather than emphasizing wild horse needs. *Id.* The legislative history makes clear that one of Congress' goals was to "deal with range deterioration in areas where excess numbers of wild-free roaming horses and burros exist." H.R.Rep. No. 1122, 95th Cong., 2nd Sess. 9 (1978). The House Report indicated that the Wild Horse Act had been so successful that the numbers of wild horses and burros "now exceed the carrying capacity of the range. Excess numbers of horses and burros pose a threat to wildlife, livestock, the improvement of range conditions, and ultimately their own survival." *Id.,* at 21.

■ The Wild Horse Act was specifically amended, then, to require "immediate" removal of excess horses. 16 U.S.C. § 1333(b)(2). When a determination is made that there is an over-population of wild horses, action is required based on the knowledge currently available, even if it is not complete. *American Horse Protection Association v. Watt,* 694 F.2d at 1317–19. Adjustments can be made later, but the endangered and rapidly deteriorating range cannot wait. *Id.*

Another part of the legislative history of the 1978 Amendments clearly sets forth Congress' goal:

"The goal of wild horses and burro management, as with all range management programs, should be to maintain a thriving ecological balance between wild horse and burro populations, wildlife, livestock, and vegetation, and to protect the range from the deterioration associated with overpopulation of wild horses and burros."

H.R.Rep. No. 1737, 95th Cong., 2nd Sess., 15 (1978), U.S.Code Cong. & Admin.News 1978, 4069, 4131.

By 1991, it became clear to BLM that it was having difficulty complying with the Congressional mandate to take "immediate" action when there were determined to be excess wild horses and burros. Because any person adversely affected had a right to appeal to the Interior Board of Land Appeals ("IBLA"), and because Interior Department regulations generally did not allow the decision to take full force and effect until IBLA's ruling, many removal decisions were delayed up to two years. Even when the Interior procedures were followed to allow decisions to be placed in full force and effect pending a final decision by IBLA, there was always a delay of months.

After publishing a proposed rule for notice and comment in 1991 (56 Fed.Reg. 30372), the final rule at issue here was adopted on June 5, 1992, published in the Federal Register on July 6, 1992, and became effective August 5, 1992. 57 Fed.Reg. 29651. The Wild Horse Act specifically authorizes the Secretary to adopt such regulations "as he deems necessary" to carry out the Act. 16 U.S.C. § 1336.

■ The regulation at issue, 43 C.F.R. § 4770.3(c), provides that:

"The authorized officer may place in full force and effect decisions to remove wild horses and burros from public or private lands if removal is required by applicable law or to preserve or maintain a thriving ecological balance and multiple use relationship. Full force and effect decisions shall take effect on the date specified, regardless of an appeal. Appeals and petitions for stay of decisions shall be filed with the Interior Board of Land Appeals as specified in this part."

The revised regulation therefore allows an "authorized officer" to place in full force and effect a decision to remove wild horses and burros, while still allowing persons adversely affected to appeal. The change is that the adversely affected person now must obtain a stay, either from IBLA or from a U.S. District Court, to stop the decision from being implemented while an appeal is pending. Prior to the change, there was an automatic stay until the appeal was decided unless BLM succeeded in getting the automatic stay lifted.

■ The scope of judicial review here, pursuant to the Administrative Procedure Act, is quite narrow. If an agency's construction of a statutory provision that the agency is responsible for administering is "reasonable," the court must defer to the agency's interpretation if the statutory language is not clearly to the contrary, unless the agency's interpretation is contrary to the purposes of the Act in question. *Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984).

Plaintiffs complain that allowing delegation of removal decisions to field officials of the BLM will result in mismanagement because field officials are "more subject to local prejudice than the Secretary of the Interior." Complaint, at 10. There is nothing in the Wild Horse Act that constricts the Secretary's power to delegate final decision-making power, and the court rejects this "inside-the-Beltway" argument. The font of all knowledge is not in Washington. The Secretary, through IBLA or otherwise, can always act to correct any decision caused by local prejudice. But Congress' goal of "immediate" decisions is clearly better met by allowing delegation of decision-making authority to the lowest responsible level.

Plaintiffs question defendants' representations to this court that a full force and effect decision becomes the final decision of the Secretary and is final agency action for the purpose of seeking judicial review pursuant to the Administrative Procedure Act. There is nothing unique or novel or improper about the agency's determination that the federal courts have immediate jurisdiction to review

agency action currently being implemented, even if there are permissive administrative remedies that remain available. The regulations do not purport to preclude judicial review until after administrative remedies are exhausted.[1] Moreover, in light of the representations made to this court, defendants would be estopped from urging any federal court to decline to review a removal decision being given full force and effect by the agency.

The statutory language and the legislative history of the Wild Horse Act, as amended, are not contrary to the Secretary's actions here in promulgating these new regulations, and the court defers to the Secretary's "reasonable" interpretation.

Plaintiffs' motion for summary judgment is DENIED.

Defendant's motion for summary judgment is GRANTED. Judgment is hereby entered for defendants, dismissing this action with prejudice.

Having now decided the merits of this case, plaintiffs' motion for preliminary injunction is DENIED as moot.

SO ORDERED.

---

1. Indeed, 43 C.F.R. § 4.21(b) provides the following under the heading "Exhaustion of Administrative Remedies":

"No decision which at the time of its rendition is subject to appeal ... shall be considered final so as to be agency action subject to judicial review made under [the Administrative Procedure Act] ... unless it has been made effective pending a decision on appeal in the manner provided in paragraph (a) of this section."

Paragraph (a) of 43 C.F.R. § 4.21 then expressly provides that except "as otherwise provided by law or other pertinent regulation" a decision will not be effective while an appeal is pending. The regulation at issue in this case is clearly a "pertinent regulation" that meets this exception. Properly read, the agency's regulations make clear that the agency construes a decision that is given full force and effect to be final agency action that is immediately subject to judicial review under the Administrative Procedure Act.